IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DR. DRAKE VINCENT, MD, an individual, and DR. BENJAMIN DUNKLEY, D.O., an individual,<br><br>     Plaintiffs,<br><br><br><br>     vs.<br><br><br>UTAH PLASTIC SURGERY SOCIETY, an unincorporated Utah organization, AMERICAN SOCIETY OF PLASTIC SURGEONS, a nonprofit Illinois corporation, THE AMERICAN BOARD OF PLASTIC SURGERY, an unincorporated Pennsylvania organization, and the following BOARD MEMBERS OF THE UTAH PLASTIC SURGERY SOCIETY doctors licensed to practice in Utah including: DR. W. BRADFORD ROCKWELL, M.D., DR. GREGORY KJAR, M.D., DR. RENATO SALTZ, M.D., DR. GRANT R. FAIRBANKS, M.D., DR. JUNE S. CHEN, M.D., DR. BRYAN V. SONNTAG, M.D., DR. ERIC ASHBY, M.D., DR. STEPHEN RALSTON, M.D., DR. YORK YATES, M.D., DR. LEE J. MALAN, DR. TRENTON JONES, DR. BRIAN K. BROWSKI M.D., DR. DAVID S. THOMAS M.D., DR. KIMBALL M. CROFTS, M.D., DR. DANIEL SELLERS, MD., DR. GRANT A. FAIRBANKS, M.D. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br><br><br><br>Case No. 2:12-CV-1048 TS |

DR. CHRISTINE A. CHENG, M.D., DR. R.
SCOTT HAUPT, M.D., DR. JAMES M.
CLAYTON, M.D.; DOES 1-10, individuals,
and DOES CORPORATIONS 1-10,
corporations,

     Defendants.

This matter is before the Court on Defendants June S. Chen, Christine A. Cheng, James

M. Clayton, Kimball M. Crofts, Gregory Kjar, Lee J. Malan, Stephen Ralston, and David S.

Thomas's Motion to Dismiss;[1] Defendant Utah Plastic Surgery Society's ("UPSS") Motion to

Dismiss;[2] Defendants Grant R. Fairbanks, Grant A. Fairbanks, and York Yates's Motion to

Dismiss;[3] and the American Board of Plastic Surgery, Inc.'s ("ABPS") Motion to Dismiss and

Motion for Joinder.[4]  Also before the Court are Plaintiffs Drake Vincent and Benjamin Dunkley's

Motion to Supplement Opposition to Defendant Chen et al Motion to Dismiss[5] and Defendants

W. Bradford Rockwell, Eric Ashby, Trenton Jones, Brian K. Browski, R. Scott Haupt, Renato

Saltz, Daniel Sellers, Grant R. Fairbanks, Grant A. Fairbanks, York Yates, Brian Sonntag,

American Society of Plastic Surgeons ("ASPS"), and UPSS's Motions for Joinder.[6]

---

[1]Docket No. 53.

[2]Docket No. 59.

[3]Docket No. 77.

[4]Docket No. 94.

[5]Docket No. 107.

[6]Docket Nos. 61, 63, 65, 76, 78, 86, 93, 94, 113, 120.

2

This matter came before the Court for oral argument on August 22, 2013.  The Court has reviewed the briefs, considered the arguments raised in oral argument and, being otherwise fully informed, is prepared to rule on the parties' motions.  For the reasons discussed more fully below, the Court will grant Plaintiffs' Motion to Supplement and Defendants' Motions for Joinder, and will grant in part and deny in part Defendants' Motions to Dismiss.

## I.  BACKGROUND

Plaintiffs Vincent and Dunkley are Utah-licensed practicing physicians and are residents of Utah.  Defendant UPSS is an unincorporated entity with its headquarters and affiliated member physicians located in Utah.  Defendant ABPS is a non-profit Illinois corporation with its principal place of business in Philadelphia, Pennsylvania.[7]  Defendant ASPS is also a non-profit Illinois corporation.  The remaining physician Defendants are residents of Utah.

Plaintiffs are cosmetic surgeons.  Cosmetic surgery is a medical specialty dedicated exclusively to the enhancement of appearance through surgical and medical techniques.  Cosmetic surgery is performed by surgeons from a variety of disciplines.  Defendants are plastic surgeons.  Plastic surgery is a medical specialty dedicated to the reconstruction of facial and body defects due to birth disorders, trauma, burns, and disease.

Plaintiffs allege that Defendants have engaged in a comprehensive effort to eliminate cosmetic surgeons such as Plaintiffs from competing in the cosmetic surgery market.  Plaintiffs complain specifically of billboards, internet advertisements, and statements made by one of the

---

[7]Plaintiffs allege that ABPS is a Pennsylvania unincorporated entity.  However, Defendant ABPS's unopposed affidavit clarifies that it is a non-profit Illinois corporation.  *See* Docket No. 94 Ex. 1, at 1.

Defendants to a news reporter.  Plaintiffs allege that Defendants' advertising campaign is funded by contributions Defendant Fairbanks solicited from the physician Defendants, ABPS, and ASPS.

Plaintiffs allege that Defendants placed billboards on Interstate 15 along the Wasatch Front that were fashioned to look as though they were "Public Safety Announcements."[8]  One such billboard pictures a young woman with a distressed look on her face with the caption "I didn't know . . . [m]y 'Cosmetic Surgeon' wasn't a Plastic Surgeon."[9]  The billboards also display the emblems of UPSS and ABPS and the internet link www.safeplasticsurgeryutah.com.

Plaintiffs complain of messages found on UPSS's website, including the title "Cheaper, Faster, Scarier" and "Lack of Training Can be Deadly in Cosmetic Surgery."[10]  The website also contains the UPSS and ABPS emblem.  Below the internet advertisements, the body of the website contains a brief profile of each of the member physicians, including their picture, name, phone number, and email address.

Plaintiffs allege that on or about August 13, 2012, Defendant Fairbanks gave an interview to ABC 4 News in Salt Lake City, Utah.[11]  Plaintiffs allege that during the interview, Defendant

---

[8]Docket No. 2, at 14.

[9]*Id*. at 15.

[10]*Id.* at 16–17.

[11]The Court would note that there are two Dr. Fairbanks among the Defendants in this case and it is impossible to ascertain from Plaintiffs' Complaint and the relevant briefing which Defendant Fairbanks is alleged to have made the statements at issue.

4

Fairbanks stated that "there is a dentist doing breast augmentation and an ob-gyn doing lipo."[12]

Defendant Fairbanks indicated that patients believe these physicians are plastic surgeons when in

fact they are not unless they are board certified.

Plaintiffs further allege that Defendants have indicated to Plaintiff Vincent's public

relations spokesman that they intend to run an ad campaign to make the public aware of

Plaintiffs' alleged incompetency.  According to Plaintiffs, Defendant Sonntag has stated that

there will be a campaign against Plaintiff Vincent through the use of billboards with the

following message: "Did you know your Tummy Tuck was done by a dentist."[13]

On October 18, 2012, Plaintiffs sent a letter to Defendants "making it clear that the

Plaintiffs had been damaged 'to a degree that will not be easy to completely ascertain as a result

of the roadside billboards.'"[14]  Plaintiffs allege that Defendants' actions have had a cooling effect

on their cosmetic surgery businesses.  In their letter, Plaintiffs requested that Defendants cease

and desist the above-described marketing efforts.  Plaintiffs filed the instant suit on November 9,

2012.

## II.  STANDARD OF REVIEW

A.     RULE 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) is the vehicle by which a party may move for

dismissal based on lack of personal jurisdiction.  Plaintiffs bear the burden of establishing the

---

[12]Docket No. 2, at 19.

[13]*Id.* at 20.

[14]*Id.* at 21.

Court's jurisdiction.[15]  When a motion to dismiss for lack of personal jurisdiction is brought

before trial and supported by affidavits and other written materials, however, Plaintiffs need only

make a prima facie showing of jurisdiction.[16]  "The 'well pled facts' of the complaint must be

accepted as true if uncontroverted by the defendant's affidavits, and factual disputes at this initial

stage must be resolved in the plaintiff's favor when the parties present conflicting affidavits."[17]

B.      RULE 12(b)(6)

        In considering a motion to dismiss for failure to state a claim upon which relief can be

granted under Federal Rule of Civil Procedure 12(b)(6), all well pled factual allegations, as

distinguished from conclusory allegations, are accepted as true and viewed in the light most

favorable to Plaintiffs as the nonmoving party.[18]  Plaintiffs must provide "enough facts to state a

claim to relief that is plausible on its face,"[19] which requires "more than an unadorned, the-

defendant-unlawfully harmed-me accusation."[20]

        "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]'

---

[15]*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[16]*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[17]*Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

[18]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[19]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[20]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

devoid of 'further factual enhancement.'"[21]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[22] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[23]

### III.  DISCUSSION

Defendant ABPS moves for dismissal under Rule 12(b)(2) on the grounds that it has insufficient contacts with this forum to justify the exercise of personal jurisdiction.  The remaining Defendants move for dismissal of Plaintiffs' claims for failure to state a claim under Rule 12(b)(6).  Plaintiffs oppose Defendants' Motions to Dismiss and request that the Court consider the arguments made in their separate oppositions jointly.  In turn, the majority of the Defendants move to join in arguments made by others for dismissal.

### A.    JOINDER AND SUPPLEMENT

Many of the Defendants are named purely in their role as members of UPSS.  Rather than file separate reasoned motions to dismiss, these Defendants seek to join in the arguments made

---

[21]*Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[22]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[23]*Iqbal*, 556 U.S. at 679 (alteration in original) (internal quotation marks and citations omitted).

by other Defendants.  Similarly, Plaintiffs seek to supplement their separate oppositions to the various motions to dismiss to include arguments made in support of each of their claims.

It is in this Court's discretion to allow supplemental briefing.[24]  The purpose of the Federal Rules and this Court's rules on briefing motions is to "secure the just, speedy, and inexpensive determination of every action and proceeding."[25]  The parties have each had an opportunity to review and respond to all of the arguments raised at this stage of the proceeding. Further, the Court heard oral argument and allowed the parties an opportunity to address any issues not adequately addressed in the briefing.  In light of this full opportunity to be heard, the Court finds that it is in the interest of justice and the speedy resolution of this matter to grant Defendants' Motions for Joinder and Plaintiffs' Motion to Supplement.

B.      JURISDICTION OVER ABPS

ABPS moves for dismissal from this suit on the grounds that exercising jurisdiction over it would not comport with due process because ABPS lacks sufficient contacts with this district and it would be inconvenient for ABPS to litigate in this forum.  Plaintiffs contend that the allegations of their Complaint demonstrate that ABPS has sufficient contacts with the forum to justify the Court exercising jurisdiction over it.  In the event the Court rejects its jurisdictional arguments, ABPS moves to join in the other Defendants' Motions to Dismiss under 12(b)(6).

---

[24]*See* DUCivR 7-1(A) ("No additional memoranda will be considered without leave of court.").

[25]Fed. R. Civ. P. 1.

"Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'"[26]

Plaintiffs bring federal claims under the Sherman Antitrust Act and the Lanham Act. Numerous courts have held that the "Lanham Act does not, by itself, provide for nationwide service of process."[27]  Federal antitrust laws, however, provide for statutory nationwide service of process by virtue of 15 U.S.C. § 22.[28]  That sections provides that:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

---

[26]*Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).

[27]*Capitol Fed. Sav. Bank v. E. Bank Corp.*, 493 F. Supp. 2d 1150, 1158 (D. Kan. 2007); *see also Allison v. Wise*, 621 F. Supp. 2d 1114, 1117 n.1 (D. Colo. 2007) ("Neither the Copyright Act nor the Lanham Act, both invoked here, provides for nationwide service of process.").

[28]*See Phone Directories Co., Inc. v. Contel Corp.*, 786 F. Supp. 930, 942 (D. Utah 1992) (holding that § 22 is a nationwide service of process provision).

As Defendant ABPS is a non-profit corporation, it is subject to § 22.[29]  It follows that jurisdiction over ABPS is statutorily authorized.  Jurisdiction is therefore proper as long as the exercise of such jurisdiction comports with due process.[30]

"In a federal question case, personal jurisdiction flows from and is limited by the Due Process Clause of the Fifth Amendment."[31]  In *Peay v. BellSouth Medical Assistance Plan*, the Tenth Circuit compared the Fifth Amendment due process limitations to "those of the Fourteenth Amendment's Due Process Clause in some respects, that is 'protecting an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum' and the *International Shoe* doctrine of not offending 'traditional notions of fair play and substantial justice.'"[32]

While recognizing the similarities between the Fifth Amendment and Fourteenth Amendment due process clauses, the *Peay* court nevertheless modified the minimum contacts analysis to be applied under the Fifth Amendment.  "First, the court shifted the burden from the plaintiff, who typically has the burden of making a prima facie showing that personal jurisdiction is proper.  Instead, the Tenth Circuit placed the burden on the defendant to show, in the first

---

[29]*See Cal. Clippers, Inc. v. U. S. Soccer Football Ass'n*, 314 F. Supp. 1057, 1061–62 (N.D. Cal. 1970); *Thill Sec. Corp. v. N.Y. Stock Exch.*, 283 F. Supp. 239, 242 (E.D. Wis. 1968); *Pac. Seafarers, Inc. v. Pac. Far E. Line*, 48 F.R.D. 347, 349 (D.D.C. 1969).

[30]*See Peay*, 205 F.3d at 1209.

[31]*B-Steel of Kan., Inc., v. Tex. Indus., Inc.*, 229 F. Supp. 2d 1209, 1214 (10th Cir. 2002) (citing *Peay*, 205 F.3d at 1210).

[32]*Id.* at 1215 (quoting *Peay*, 205 F.3d at 1211).

instance, 'that his liberty interests actually have been infringed.'"[33]   Defendant must also

demonstrate that "the exercise of jurisdiction in the chosen forum will 'make litigation so gravely

difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his

opponent.'"[34]

The *Peay* court provided the following factors to be considered when evaluating whether

a defendant has met his "burden of establishing constitutionally significant inconvenience:"[35]

> (1) the extent of the defendant's contacts with the place where the action was
> filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction
> other than that of his residence or place of business, including (a) the nature and
> extent and interstate character of the defendant's business, (b) the defendant's
> access to counsel, and (c) the distance from the defendant to the place where the
> action was brought; (3) judicial economy; (4) the probable situs of the discovery
> proceedings and the extent to which the discovery proceedings will take place
> outside the state of the defendant's residence or place of business; and (5) the
> nature of the regulated activity in question and the extent of impact that the
> defendant's activities have beyond the borders of his state of residence or
> business.[36]

Further, the court emphasized that "it is only in highly unusual cases that inconvenience

will rise to a level of constitutional concern."[37]   And, even where a defendant "successfully

demonstrates that litigation in the plaintiff's chosen forum is unduly inconvenient," jurisdiction

---

[33]*Id.* (quoting *Peay*, 205 F.3d at 1212).

[34]*Peay*, 205 F.3d at 1212 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 470–77 (1985)).

[35]*Id.* (quoting *Republic of Pan.*, 119 F.3d at 946).

[36]*Id.* (quoting *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 203 (E.D. Pa. 1974)).

[37]*Id.* (internal quotation marks and citation omitted).

may still "comport with due process if the federal interest in litigating in the chosen forum

outweighs the burden imposed on the defendant."[38]

> To determine whether infringement on the defendant's liberty is justified
> sufficiently by government interests, "courts should examine the federal policies
> advanced by the statute, the relationship between nationwide service of process
> and the advancement of these policies, the connection between the exercise of
> jurisdiction in the chosen forum and the plaintiff's vindication of his federal right,
> and concerns of judicial efficiency and economy.  Where . . . Congress has
> provided for nationwide service of process, courts should presume that nationwide
> personal jurisdiction is necessary to further congressional objectives."[39]

Here, Defendant ABPS has provided a declaration from its executive director, R. Barrett

Noone, M.D., in support if its Motion to Dismiss.  Dr. Noone attests that ABPS has no offices or

employees in Utah, does not own any property in Utah, and is not registered to do business in

Utah.  According to Dr. Noone, ABPS's function is to certify physicians in the field of plastic

surgery.  The certification process involves a written examination that is administered by a third

party independent contractor and an oral section that is administered by ABPS.  The oral section

of the exam has not been administered in Utah since the 1970s.  A physician that passes the tests

is granted a certification by ABPS.  Written communications between ABPS and physicians in

Utah consist of correspondence with candidates regarding the certification process,

correspondence with board certified physicians regarding maintenance of the certification, and

the mailing of an annual newsletter.  Dr. Noone denies any involvement of ABPS in the

advertising campaign at issue in this case.

---

[38] *Id.* at 1213 (internal quotation marks and citation omitted).

[39] *Id.* (quoting *Republic of Pan.*, 119 F.3d at 948).

Based on the foregoing evidence, the Court finds that Defendant has very few contacts with Utah. Such contacts are limited to the certifying of plastic surgeons who practice in Utah, and the mailing of an annual newsletter. That being said, defending in this forum will not be particularly difficult, because ABPS operates across state boundaries and has access to counsel. Further, given modern advances in technology and transportation, the distance from Pennsylvania to Utah does not support a finding of inconvenience.[40] Judicial economy also favors a finding of jurisdiction as the claims against ABPS may be heard jointly with those of the remaining Defendants. Indeed, Defendant ABPS has moved to join in the other Defendants' Motions to Dismiss under 12(b)(6). Were Plaintiffs required to bring their claims against ABPS in another forum, an additional court would be required to consider the same claims.

At this stage of the litigation, it appears that all discovery related to this dispute will occur within this forum. Plaintiffs' allegations are centered entirely on Utah, with the barest reference to the Western states. Finally, Plaintiffs' federal claims are brought pursuant to the Sherman Antitrust Act, which is highly remedial in nature. The Court construes that act broadly, in order to protect against any alleged violations. Thus, to the extent ABPS was involved in any conspiracy violative of the federal antitrust laws, such actions would be felt beyond the borders of Illinois or Pennsylvania, where ABPS is located and incorporated.

Upon consideration of the foregoing factors and the evidence provided by Defendant ABPS, the Court finds that Defendant ABPS has failed to meet its burden to demonstrate that its

---

[40]*See id.* ("Certainly, in this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened.") (internal quotation marks and citations omitted).

liberty interests have been infringed and that it will suffer constitutionally significant inconvenience.  Therefore, the Court finds that jurisdiction is proper in this case.  In light of Defendant ABPS's failure to show constitutionally significant inconvenience, the Court declines to address the second prong of the Tenth Circuit's due process analysis, the balancing test, which weighs the federal interest in litigating the dispute in the chosen forum against the burden imposed on the defendant.

C.      DEFENDANTS' 12(b)(6) MOTIONS

1.      SHERMAN ACT § 1

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States."[41]  The United States Supreme Court "has not taken a literal approach to this language."[42]  Rather, the Court "has long recognized that Congress intended to outlaw only unreasonable restraints" in trade or commerce.[43]  Thus, unless the alleged conduct qualifies as a per se violation of § 1, the Court "presumptively applies [a] rule of reason analysis, under which antitrust plaintiffs must

---

[41]15 U.S.C. § 1.

[42]*Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) (internal citations omitted); *see also Am. Needle, Inc. v. Nat'l Football League*, 130 S. Ct. 2201, 2208 (2010) ("Taken literally, the applicability of § 1 to 'every contract, combination . . . or conspiracy' could be understood to cover every conceivable agreement, whether it be a group of competing firms fixing prices or a single firm's chief executive telling her subordinate how to price their company's product.  But even though, 'read literally,' § 1 would address 'the entire body of private contract,' that is not what the statute means.").

[43]*State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) (citing *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 342–43 (1982)).

demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful."[44]

"*Per se* liability is reserved for only those agreements that are 'so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'"[45]  Courts have recognized the following as per se violations of § 1: "(1) [h]orizontal agreements between actual or potential competitors to fix prices"; "(2) [h]orizontal territorial, customer, output, and other market restraints between competitors"; and (3) "[h]orizontal group boycotts by competitors with shared market power or control over a scarce resource or facility."[46]  While "[o]ther concerted activities may at least in theory be brought under the per se banner,"[47] courts have "expressed reluctance to adopt per se rules where the economic impact of certain practices is not immediately obvious."[48]  For this reason, such "a departure from the rule-of-reason standard must be based upon demonstrable economic effect rather than upon formalistic line drawing."[49]

Plaintiffs fail to allege conduct on the part of Defendants that demonstrates a concerted practice or action falling under one of the three categories of per se violations.  Defendants are not alleged to have agreed to fix prices, reduce output, allocate territories, or otherwise control or

---

[44]*Texaco Inc.*, 547 U.S. at 5.

[45]*Id.* (quoting *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978)).

[46]William Holmes & Melissa Mangiaracina, *Antitrust Law Handbook* § 2.9 (2012).

[47]*Id.*

[48]*Id.*

[49]*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 887 (2007) (internal quotation marks and citation omitted).

boycott the cosmetic surgery market.  Further, Plaintiffs fail to allege a demonstrable economic

effect of Defendants' actions, beyond the general allegation that Plaintiffs have experienced a

"cooling" in their business since Defendants began their marketing campaign.  This allegation

does not demonstrate an economic effect in the market that is immediately obvious, thereby

justifying the recognition of a new category of per se violations.  Accordingly, the Court

concludes that Plaintiffs have not sufficiently alleged a per se violation of § 1.

    The Court will therefore consider Plaintiffs' claim under the "rule of reason" analysis.

The rule of reason analysis "requires 'the fact finder to weigh all of the circumstances of a case in

deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint

on competition.'"[50]  In so doing, the Court must consider the alleged market and the relevant

market power of the parties.[51]  Other Circuits have established four distinct factors, or elements,

required in order to state a claim under the rule of reason analysis:

> (1) that the defendants contracted, combined or conspired among each other; (2)
> that the combination or conspiracy produced adverse, anti-competitive effects
> within the relevant product and geographic markets; (3) that the objects of and the
> conduct pursuant to that contract or conspiracy were illegal; and (4) that the
> plaintiffs were injured as a proximate result of that conspiracy.[52]

    Defendants argue that Plaintiffs' § 1 claim fails under the rule of reason analysis because

Plaintiffs failed to plead facts with particularity demonstrating an agreement or conspiracy.  The

---

[50]*Diaz v. Farley*, 215 F.3d 1175, 1182 (10th Cir. 2000) (quoting *Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49 (1977)).

[51]*Campfield v. State Farm Mut. Auto Ins. Co.*, 532 F.3d 1111, 1119 (10th Cir. 2008).

[52]*Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 465–66 (3d Cir. 1998) (internal quotation marks and citation omitted); *see also Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010).

relevant inquiry in determining whether a plaintiff has alleged "concerted action" for purposes of a § 1 claim

> is whether there is a "contract, combination . . . or conspiracy" amongst "separate economic actors pursuing separate economic interests," such that the agreement "deprives the marketplace of independent centers of decisionmaking," and therefore of "diversity of entrepreneurial interests" and thus of actual or potential competition.[53]

In support of their argument, Defendants rely on a case from the Eastern District of Pennsylvania, *Brunson Communications, Inc. v. Arbitron, Inc.*[54]  In that case, the owner of a small television station sued a television viewership measuring company, alleging that it violated § 1 of the Sherman Act by conspiring with the plaintiff's competitors to exclude the plaintiff from certain viewership tests.[55]  The *Brunson* court found that the plaintiff's claim failed, in part, because it did not identify any of "the entities which allegedly conspired with [the] [d]efendant," and did not "sufficiently describe any contract, combination or conspiracy between Arbitron and [the plaintiff's competitors]."[56]

The facts and holding of *Brunson* have little applicability to this case.  Though Plaintiffs' Complaint is rife with legal conclusions and naked assertions, it also contains specific factual allegations that, when viewed in the light most favorable to Plaintiffs, support the conclusion that

---

[53]*Am. Needle*, 130 S. Ct. at 2212 (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984); *Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 57 (1st Cir. 2002)).

[54]239 F. Supp. 2d 550 (E.D. Pa. 2002).

[55]*Id.* at 563–64.

[56]*Id.* at 562.

there was an agreement or combination among separate economic interests.  Plaintiffs allege that

UPSS, ABPS, and the individual Defendants contributed financially to a marketing campaign

aimed at eliminating cosmetic surgeons from competing in the cosmetic surgery market.

Plaintiffs also allege specific actions taken by several of the individual Defendants and UPSS to

further the same campaign.  Thus, unlike the plaintiff in *Brunson*, Plaintiffs have done more than

allege "unspecified contracts with unnamed other entities to achieve unidentified anticompetitive

effects."[57]

That being said, Plaintiffs' § 1 claim suffers from other pleading deficiencies.  Plaintiffs

fail to adequately allege that Defendants' concerted action had an anticompetitive effect on the

market generally.  Plaintiffs argue that they have sufficiently alleged that Defendants' concerted

action is anticompetitive because it has had "a significant cooling effect" on their business.[58]

According to Plaintiffs, Defendants' advertising campaign is anticompetitive because it is aimed

at stealing potential patients away from Plaintiffs and directing them to Defendants.  Plaintiffs'

argument misses the mark.

"[A] practice ultimately judged anticompetitive is one which harms competition, not a

particular competitor."[59]  The proper focus is on the consumer, not producers.[60]  Plaintiffs do not

---

[57]*Id.* at 560 (internal quotations marks and citation omitted).

[58]Docket No. 95, at 11–12.

[59]*SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 963 (10th Cir. 1994) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977); *Brown Shoe Co. v. United States*, 370 U.S. 294, 319–20 (1962)).

[60]*See Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 623 (7th Cir. 2005).

allege that Defendants engaged in coercive behavior that prevented Plaintiffs from providing

their services to willing patients.  Rather, Plaintiffs' antitrust claim is premised on their

allegations that Defendants' marketing campaign informs potential customers that Plaintiffs are

not plastic surgeons.  Plaintiffs' allegations of deception in the form of marketing, due to the

label "Public Safety Announcement," does not change the analysis as "deception, reprehensible

as it is, can be of no consequence so far as the Sherman Act is concerned."[61]

In this regard, this case bears many similarities to the Third Circuit decision in *Santana*

*Products, Inc. v. Bobrick Washroom Equipment, Inc.*[62]  In that case, the plaintiff was in the

business of providing toilet partitions.  The defendants also provided toilet partitions.  The

defendants' partitions were made of a product that was alleged to be more fire resistant.  The

defendants engaged in a marketing campaign aimed at persuading purchasers that plaintiff's

partitions presented a fire safety hazard.  The *Santana* court failed to "find 'restraint' in this

alleged activity" and held that "without a 'restraint,' there is 'no restraint of trade.'"[63]  The court

reasoned that in spite of the advertising campaign, it was still the purchaser that made "the

ultimate decision of which product to specify for use in a particular project.  This is classic

---

[61]*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 145 (1961).

[62]401 F.3d 123 (3d Cir. 2005).

[63]*Id.* at 132 (quoting *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397 (7th Cir. 1989)).

competition on the merits of a product."[64]  The court concluded that the plaintiff's § 1 claim

failed because plaintiffs, "[i]n no real sense," were "excluded from the toilet partition market."[65]

The Fifth Circuit, in *Stearns Airport Equipment Co. v. FMC Corp.*,[66] considered a similar

claim and held:

> All of these arguments made by FMC to its potential customers may have been
> wrong, misleading, or debatable.  But they are all arguments on the merits,
> indicative of competition on the merits.  To the extent they were successful, they
> were successful because the consumer was convinced by either FMC's product or
> FMC's salesmanship.  FMC—unsurprisingly—wanted to be picked over Stearns
> on a contract. . . .  Without a showing of some other factor, we can assume that a
> consumer will make his decision only on the merits.  To the extent a competitor
> loses out in such a debate, the natural remedy would seem to be an increase in the
> losing party's sales efforts on future potential bids, not an antitrust suit.[67]

"The Sherman Act is not a code of medical ethics or methodology."[68]  It "does not reach

conduct that is only unfair, impolite, or unethical."[69]  Rather, the Sherman Act covers conduct

that is anticompetitive or results in an unreasonable restraint on trade.  Because Plaintiffs fail to

allege conduct on the part of Defendants that is either anticompetitive or that restrains trade,

Plaintiffs' § 1 claim fails to state a claim for which relief may granted.

---

[64]*Id*. at 133.

[65]*Id*.

[66]170 F.3d 518 (5th Cir. 1999).

[67]*Id*. at 524–25; *see also Sanderson v. Culligan Int'l Co.*, 415 F.3d 620 (2005) ("Antitrust law condemns practices that drive up prices by curtailing output.  False statements about a rival's goods do not curtail output in either the short or the long run.  They just set the stage for competition in a different venue: the advertising market.").

[68]*Schachar*, 870 F.2d at 400.

[69]*Ind. Grocery, Inc. v. Super Valu Stores, Inc*., 864 F.2d 1409, 1413 (7th Cir. 1989).

2.      SHERMAN ACT § 2

"Section 2 of the Sherman Act prohibits monopolies in interstate trade or commerce."[70]
"The two elements required to maintain a [§] 2 monopoly claim are: '(1) the possession of
monopoly power in the relevant market and (2) the willful acquisition or maintenance of that
power as distinguished from growth or development as a consequence of a superior product,
business acumen, or historic accident.'"[71]

Plaintiffs maintain that the relevant market at issue is the geographical market for
cosmetic surgery services in Utah and the Western United States.  Even accepting as true that this
allegation meets the requirement to define a relevant market, Plaintiffs' claim must fail because
Plaintiffs do not allege that Defendants possess monopoly power in the cosmetic surgery market.
"Monopoly power is correctly defined in this circuit as the ability to control prices *and* exclude
competition."[72]  Plaintiffs' Complaint contains no well-pled allegations that Defendants have the
ability to control prices or exclude competition.  Indeed, Plaintiffs allege that they themselves are
cosmetic surgeons and perform cosmetic surgeries in the relevant market.  Thus, the allegations
of Plaintiffs' Complaint, taken together, demonstrate that Defendants do not possess monopoly
power in the relevant market.

---

[70]*TV Commc'ns Network, Inc. v. Turner Network Television, Inc*., 964 F.2d 1022, 1025
(10th Cir. 1992).

[71]*Id*. (quoting *United States v. Grinnell Corp*., 384 U.S. 563, 570–71 (1966)).

[72]*Key Fin. Planning Corp. v. ITT Life Ins. Corp*., 828 F.2d 635, 643 (10th Cir. 1987)
(internal quotation marks and citations omitted) (emphasis in original).

Plaintiffs similarly fail to properly plead a claim for attempted monopolization. "The four elements necessary to establish an attempt to monopolize claim are: '(1) relevant market (including geographic market and relevant product market); (2) dangerous probability of success in monopolizing the relevant market; (3) specific intent to monopolize; and (4) conduct in furtherance of such an attempt.'"[73] To maintain a claim for attempted monopolization, Plaintiffs "must plead facts sufficient to establish the existence of a relevant market and the defendant's power in that market."[74] "The key inquiry involves the power of the defendant in the market in which it competes."[75]

Here, Plaintiffs' Complaint is devoid of any factual allegations establishing Defendants' power in the cosmetic surgery market. Without knowing the relative strength of Defendants in that market, the Court cannot ascertain the probability that any attempt would result in a monopoly.[76] Furthermore, the allegations Plaintiffs cite in support of their attempt to monopolize claim are the sort of legal conclusions devoid of factual enhancement the Supreme Court found unacceptable in *Twombly*.[77] For example, Plaintiffs rely on the following "allegation" in support of this claim:

---

[73]*TV Commc'ns Network*, 964 F.2d at 1025 (quoting *Colo. Interstate Gas Co. v. Natural Gas Pipeline*, 885 F.2d 683, 693 (10th Cir. 1989), *cert. denied*, 498 U.S. 972 (1990)).

[74]*Id*. at 1025–26.

[75]*Id*. at 1025.

[76]*See Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1376 (10th Cir. 1979).

[77]*Twombly*, 550 U.S. at 557.

Plaintiffs have the potential to compete with Defendants and thereby to erode Defendants' monopoly.  Defendants have willfully engaged, and are engaging, in a course of conduct, including tying and unreasonably exclusionary conduct, in order to obtain a monopoly in the cosmetic services market, and there is a dangerous probability that unless restrained, it will succeed, in violation of Section 2 of the Sherman Act, 15 U.S.C. 128.  Defendants have acted with a specific intent to monopolize, and to destroy effective competition in the cosmetic market.[78]

In short, Plaintiffs attempt to monopolize claim fails because Plaintiffs have alleged no facts establishing that there is a dangerous probability that Defendants may monopolize the relevant market.[79]

Finally, Plaintiffs fail to state a claim for conspiracy to monopolize.

To establish a claim for conspiracy to monopolize in violation of [§] 2, a plaintiff must plead facts sufficient to support four elements: (1) "the existence of a combination or conspiracy to monopolize;" (2) "overt acts done in furtherance of the combination or conspiracy;" (3) "an effect upon an appreciable amount of interstate commerce;" and (4) "a specific intent to monopolize."[80]

As has been discussed, Plaintiffs do not provide any factual allegations regarding the market strength of Defendants.  Therefore, it is impossible for the Court to determine the effect Defendants' actions have had on interstate commerce.  Further, while Plaintiffs have alleged that Defendants agreed to contribute to a general advertising campaign denigrating Plaintiffs' cosmetic surgery practices, Plaintiffs have not alleged the existence of a combination or conspiracy to monopolize the market.

---

[78]Docket No. 2, at 25; *see also* Docket No. 95, at 24.

[79]*TV Commc'ns Network*, 964 F.2d at 1026.

[80]*Id.* (quoting *Olsen v. Progressive Music Supply, Inc.*, 703 F.2d 432, 438 (10th Cir. 1983), *cert. denied*, 464 U.S. 866 (1983)).

23

The Tenth Circuit has held that "[a] complaint is subject to dismissal where it does 'little more than recite the relevant anti-trust laws.'"[81]  Plaintiffs' § 2 claim consists of labels and conclusions, without the factual allegations necessary to prove the requisite elements of the claim.  Accordingly, the Court will grant Defendants' Motions to Dismiss on this ground.

3.     LANHAM ACT

The Lanham Act prohibits, among other things, false advertising.[82]  Section 43(a) of the Act, as amended, provides in relevant part that:

> Any person who, on or in connection with any goods or services, . . . uses in commerce . . . any . . . false or misleading representation of fact which . . . in commercial advertising or promotion misrepresents the nature, characteristics, [or] qualities . . . of . . . another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[83]

The Tenth Circuit has instructed that a violation of the Lanham Act's prohibition on false advertising occurs when:

> (1) th[e] defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.[84]

---

[81]*Id.* at 1027 (quoting *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1387 (10th Cir. 1980)).

[82]*See* 15 U.S.C. § 1125(a).

[83]*Id.* § 1125(a)(1)(B).

[84]*Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) (internal citations omitted).

To maintain their Lanham Act claim, Plaintiffs must first prove that Defendants' marketing campaign contained material false or misleading representations of fact.  Defendants focus their falsity analysis on the following three messages found in Defendants' billboard and Internet advertisements: (1) "I did not know . . . [m]y 'Cosmetic Surgeon' wasn't a 'Plastic Surgeon;'" (2) "Cheaper, Faster, Scarier;" and (3) "Lack of training can be deadly in Cosmetic Surgery."[85]  Defendants argue that Plaintiffs fail to plead a material false or misleading statement of fact because these statements are not directly or indirectly false but, rather, are merely statements about the cosmetic and plastic surgery market generally.  Defendants also maintain that these statements are not actionable under the Lanham Act because they do not make any mention of Plaintiffs' products or services.

Plaintiffs contend that when read with their other factual allegations, including Defendant Fairbank's statements to ABC 4 News, the advertising statements are subject to a false, indirect intimation or ambiguous suggestion that Plaintiffs are not qualified to perform cosmetic surgery. Plaintiffs' contention raises preliminary questions as to which of Defendants' statements constitute "commercial advertising or promotion."

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.  While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4)

---

[85]Docket No. 2, at 15–17.

must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.[86]

"[T]he meaning of 'commercial speech' in the context of § 43(a)(1)(B) of the Lanham Act tracks the First Amendment 'commercial speech' doctrine."[87]  In *Bolger v. Youngs Drug Products Corp.*,[88] the Supreme Court discussed three factors for determining whether speech is commercial or noncommercial: (1) whether the communication is an advertisement, (2) reference to a specific product, and (3) the economic motivation of the speaker.[89]  Under this standard, it is clear that Defendants' billboard and Internet ads are commercial speech as they are advertisements that refer specifically to cosmetic surgery and Defendants have an economic motive in placing such ads.  A closer question is whether Defendant Fairbanks's statements to ABC 4 News qualify as commercial speech.

The facts and holding of *Proctor & Gamble Co. v. Haugen* provide guidance on this issue.  In that case, the Tenth Circuit considered whether a competitor's statement that Proctor & Gamble was a corporate agent of Satan was commercial advertising or promotion under the Lanham Act.[90]  The court noted that the message contained "both a noncommercial, 'theological'

---

[86]*Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir. 2000) (citing *Gordon & Breach Sci. Publishers, S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994)).

[87]*Id.* at 1274 (internal citations omitted).

[88]463 U.S. 60 (1983).

[89]*Id.* at 66–67.

[90]*Proctor and Gamble*, 222 F.3d at 1270–76.

component and a commercial component."[91]   However, "the message [also] unambiguously

urge[d] recipients to eschew purchasing P & G products in favor of Amway products."[92]   That

unambiguous message led the court to conclude that "[w]hile economic motivation or reference

to a specific brand name and products, when viewed in isolation, might not render a message

commercial speech . . . those factors taken together with the instant message's promotion of

Amway products at the expense of P & G products support the characterization of the subject

message as commercial speech."[93]

     Unlike the statement in *Proctor and Gamble*, Defendant Fairbank's statement to ABC 4

News does not eschew the purchase of a product or service from one source over another.   While

the statement raises both commercial and non-commercial concerns, it does not have a clear

commercial component.   The statement does not directly reference Plaintiffs, nor does it promote

Defendants products over Plaintiffs.   For this reason, the Court finds that Defendant Fairbank's

statement is not commercial speech for purposes of the Lanham Act.

     With regard to the billboard and Internet advertisements, the remaining "commercial

advertising or promotion" factors are easily met.   Defendants are alleged to be in commercial

competition with Plaintiffs.   It follows that one purpose of Defendants' advertising campaign is

to influence the purchasing decisions of potential cosmetic surgery patients.   Further, the

statements are alleged to have been viewed or heard by a broad audience, sufficient to constitute

---

[91]*Id*. at 1275.

[92]*Id*.

[93]*Id*.

27

advertising or promotion within the industry.  Based on the foregoing, the Court finds that Defendants' billboard and Internet advertisements are commercial advertising or promotion made in commerce.

Returning to the issue of falsity, "[t]he Lanham Act covers statements which are both literally false and impliedly false."[94]  "Section 43(a) of the Lanham Act encompasses more than literal falsehoods," because otherwise, "clever use of innuendo, indirect intimations, and ambiguous suggestions could shield the advertisement from scrutiny precisely when protection against such sophisticated deception is most needed."[95]

The advertising messages at issue are not literally false.  Each advertisement encourages awareness on the part of those seeking cosmetic surgery services.  At best, the advertisements encourage such potential purchasers of cosmetic surgery services to use a plastic surgeon rather than a cosmetic surgeon.

The advertisements are also not impliedly false.  Use of the term "Public Safety Announcement" and the seals of the various plastic surgery entities in conjunction with the message do not change this outcome.  While such statements and endorsements lend the ads an added layer of credibility, they do not create an indirect intimation that Plaintiffs are not qualified to perform cosmetic surgeries.

---

[94] *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1032, 1058 (D. Kan. 2006) (citing *Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*, 258 F. Supp. 2d 1197, 1209 (D. Kan. 2003)).

[95] *Cottrell*, 191 F.3d at 1252.

Further, the advertising messages at issue do not target Plaintiffs.  Plaintiffs rely on the non-commercial statements of Defendants Fairbanks and Sonntag to support their assertion that they are the target of Defendants' advertising campaign.  Such statements, even where alleged with sufficient particularity, do not provide support for Plaintiffs' assertion that they are the focus of the advertisements.  Based on the foregoing, the Court finds that the subject commercial advertising messages do not constitute material false or misleading representations of fact.

With regard to the remaining factors, the Court would note that Plaintiffs have failed to adequately plead damages in this case.  Because Defendants' advertising messages are not "literally false or demonstrably deceptive," Plaintiffs' damages are not presumed.[96]  Rather, "to recover damages [P]laintiff[s] must prove [they have] been damaged by actual consumer confusion or deception resulting from the violation."[97]  Plaintiffs' Complaint contains only the barest allegation of injury, namely that Plaintiffs have experienced a "cooling" in their business since Defendants began their marketing campaign.  The Court finds that this allegation is insufficient to establish an actual injury for purposes of Plaintiffs' Lanham Act claim.

Because Plaintiffs have failed to properly allege falsity or injury, the Court finds that their Lanham Act claim does not state a claim for relief that is plausible on its face.

---

[96]*Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000).

[97]*Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987).

4.      STATE LAW CLAIMS

The Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331 because one or more of Plaintiffs' claims arise under the laws of the United States.[98]  The Court's subject matter jurisdiction over Plaintiffs' state law claims is derived from 28 U.S.C. § 1367. While 28 U.S.C. § 1367(a) provides this Court "supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction," this "pendent jurisdiction over state claims 'is exercised on a discretionary basis.'"[99]  The Tenth Circuit has made clear that "if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."[100]

In light of this precedent and the foregoing finding that Plaintiffs' federal claims fail to state a claim for which relief may be granted, the Court will dismiss Plaintiffs' remaining state law claims without prejudice.  Plaintiffs may re-file their state law claims in a state court with appropriate jurisdiction.[101]

---

[98]*See* Docket No. 2, at 5; 28 U.S.C. § 1331 (providing that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

[99]*Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (quoting *Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997)).

[100]*Id.* (internal quotation marks and citations omitted).

[101]*See id.* (reversing district court's grant of summary judgment on state law claims and remanding to dismiss such claims without prejudice).

D.      AMENDMENT

In their opposition, Plaintiffs briefly state that "in the event the Court finds Plaintiffs have not met their burden with respect to satisfying the Court in pleading an adequate amount of facts with the prescribed amount of particularity, Plaintiffs request the Court allow an amendment to the complaint."[102]  "Although the 'failure to file a formal motion is not always fatal, a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it.'"[103]  "[A] brief request, made in opposition to a motion to dismiss, that neither describes nor gives grounds for amendment does not satisfy this standard."[104]  Plaintiffs' brief request does not provide this Court or Defendants notice of any basis for amendment. Therefore, the Court declines to recognize Plaintiffs' brief statement as a motion to amend.

### III.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Plaintiffs' Motion to Supplement Opposition to Defendant Chen et al Motion to Dismiss (Docket No. 107) is GRANTED.  It is further

---

[102]Docket No. 95, at 5.

[103]*Koyle v. Wells Fargo Bank Minn.*, 470 F. App'x 712, 713 (10th Cir. 2012) (unpublished) (quoting *Calderon v. Kan. Dep't of Soc. and Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)).

[104]*Id.* (citing *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010); *Calderon*, 181 F.3d at 1185–87; *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370–71 (10th Cir. 1989)).

ORDERED that Defendants' Motions for Joinder (Docket Nos. 61, 63, 65, 76, 78, 86, 93, 94, 113, and 120) are GRANTED.  It is further

ORDERED that Defendant ABPS's Rule 12(b)(2) Motion to Dismiss (Docket No. 94) is DENIED.  It is further

ORDERED that Defendants' Motions to Dismiss (Docket Nos. 53, 59, and 77) are GRANTED as to Plaintiffs' federal claims and DENIED WITHOUT PREJUDICE as to Plaintiffs' state law claims.  The Clerk of Court is instructed to close this case forthwith.

DATED   September 5, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge